# Tobin *versus* Gregg *et al.*

A testator devised and bequeathed all his real and personal estate to his widow, " with full power to dispose of the same, among my lawful heirs or grandchildren, as she may think proper, at her decease, or before, if she may wish to distribute the whole, or part of the same:" *Held*, that if a trust were thereby created, it was coupled with a power of appointment, by the exercise of which, by the widow, in her lifetime, she was enabled to convey the entire interest in a portion of the testator's real estate, to one of the heirs, discharged from any trust in the hands of her appointee.

Where parties have executed a conveyance of real estate, without fraud or mistake, the conditions on which it was made, cannot be affected by parol evidence of loose declarations of the grantor, to third parties, who have no interest in the transaction.

In an action of *assumpsit*, in which the defendant's promise rests on parol evidence, it is error, even if the consideration for it be adequate, to take from the jury the fact of the assumption; and to charge that, if the evidence be believed, the plaintiff is entitled to recover.

Error to the Common Pleas of *Fayette county*.

This was an action of *assumpsit* by Aaron Gregg, Thomas Gregg, George Gregg, and Stephen Cameron and Amanda his wife (formerly Amanda Gregg), against Martin Tobin, on an alleged parol promise to pay to them, as heirs of Thomas Tobin, deceased, the sum of $600, in consideration of the conveyance to the defendant, by the widow of the said Thomas Tobin, of a portion of his real estate.

Thomas Tobin, the father of the defendant, and the grandfather of the plaintiffs, died in June 1844, possessed of considerable property, real and personal; and leaving a widow, Lydia Tobin, and the following lineal descendants, namely, three sons, Martin, Benjamin, and Thomas, two daughters, Matilda Fields and Hester Monteith, and the issue of two other deceased daughters, the plaintiffs, who were the issue of Sarah Gregg, and Thomas Moats, the issue of Lydia Moats.

By his last will and testament, he devised all his real and personal estate to his wife, Lydia, "with full power to dispose of the same among my lawful heirs or grandchildren, as she may think proper, at her decease, or before, if she may wish to distribute the whole, or part of the same."

On the 24th August 1844, the widow executed and delivered

[Tobin *v.* Gregg *et al.*]

to Martin Tobin, the defendant, a deed for 364 acres of land in Fayette county, Pennsylvania, " in consideration of the natural love and affection which she hath and bears unto her son Martin Tobin, and also for and in consideration of the sum of one dollar to her in hand paid by the said Martin Tobin." She reserved to herself, however, the whole of the rents, issues, and profits thereof, during her natural life. And on the same day, Matilda Fields and Hester Monteith, in consideration of the sum of $600 paid to each of them by the defendant, executed to him assignments of all their interest in the whole of the real and personal estate of their deceased father.

The plaintiffs alleged that, by the will of the testator, the widow became a trustee for his heirs and lineal descendants; and that the defendant, in consideration of the conveyance of the farm in Fayette county, by the widow, assumed to pay to each of the heirs of his deceased father the sum of $600; and to sustain their case, they offered the following evidence:—

*John Morgan.*—" Sometime in August or September 1844, shortly after the vendue (after the death of his father), I was over at the widow Tobin's; Martin and me walked over the fields, to look at some cattle I had bought at the sale. Martin told me he had bought that farm of his mother; he told me, he was to pay each of the heirs $600—the two that were here he had given his notes (Matilda and Hester), and if the others had been here he would have given them his notes. Then he stated, his mother wanted him to keep young Moats his lifetime; she wanted him to have his maintenance out of the farm; he would not agree to that, but would give him the same as the others; he would not be troubled with him. This was the end of the conversation at that time. He, however, went on and made a calculation what the farm would cost him; he counted the six heirs, and said, that would be $3600, and counting in his own share would make $4200, which was pretty near what the property was worth. He did not want any advantage of any of the heirs; he said, his brother Benjamin might have the place if he would pay the same he was to pay; he said, he would then have three shares in the place, and that would be worth more to him than after he would pay out to the other four heirs; in the three shares, he counted his own share, and Matilda and Hester's, to whom he had given notes. That same fall again, Martin came to me and wanted to sell the place to me; said the heirs might be troublesome, bring suits, and break him up."

*John Stentz.*—" Sometime in the spring, before his mother's death, his mother requested me to go and see Martin to get her some wood or coal; I went out in the woods to him where he was getting wood for himself. He said, he dare not go to his mother's; that the rest of them had as good a right to get her wood as he

[Tobin *v.* Gregg *et al.*]

had; he had taken or got the place from his mother, and was to give the rest of the heirs $600 apiece; said he did not make a great deal; taking in his own share it would be $4200."

*Lewis Hunter.*—"A few days after Thomas was up here, December 1844, from Kentucky, he (Martin) told me he was to pay a part or all of the heirs $600; I could not say which, it is so long ago; when he stated what he had to pay, I added it up and said it was near what it was worth, cash down; said he offered it to Thomas on the same terms, and he would not take it; he said he had the shares of Hester and Matilda, and with these two shares and his own, which would be $1800, he could do better."

The defendant objected to the admisssion of this evidence; but the court below overruled the objection, admitted the evidence, and sealed a bill of exceptions.

The court below (GILMORE, P. J.), after referring to this evidence, instructed the jury, that if it was believed, the plaintiffs were entitled to recover.

To this instruction the defendant excepted; and a verdict and judgment having been rendered for the plaintiffs for $1082.40, he sued out this writ, and here assigned for error: 1. The admission of the' parol evidence mentioned in his bill of exceptions. 2. The binding instruction of the court to the jury.

*J. B. & A. Howell, Kaine,* and *Ewing,* for the plaintiff in error.—The parol evidence was inadmissible, to show that the deed to the defendant was upon a different consideration from that expressed therein: 5 *Rep.* 26; Villers *v.* Beamont, 2 *Dyer* 147; Clarkson *v.* Hanway, 2 *P. Wms.* 203–4; Meres *v.* Ansell, 3 *Wils.* 275; Preston *v.* Merceau, 2 *W. Bl.* 1249; 7 *Johns.* 341; Howes *v.* Barker, 3 *Id.* 506; Schermerhorn *v.* Vanderheyden, 1 *Id.* 139; Church *v.* Church, 4 *Yeates* 280; Cozens *v.* Stevenson, 5 *S. & R.* 421.

But the court was clearly in error in giving a binding instruction to the jury; the fact of the defendant's assumption ought to have been submitted to them.

*Veech,* for the defendants in error, cited Krider *v.* Lafferty, 1 *Wh.* 314; Coates's Appeal, 2 *Barr* 129; Jackson *v.* Jackson, *Id.* 212; Gregory *v.* Setter, 1 *Dall.* 193; Hoge *v.* Hoge, 1 *Watts* 163; Jones *v.* McKee, 3 *Barr* 496; s. c. 6 *Id.* 425; Murphy *v.* Hubert, 7 *Id.* 420; Hayden *v.* Mentzer, 10 *S. & R.* 329; White *v.* Weeks, 1 *Penn. R.* 486; Jack *v.* Dougherty, 3 *Watts* 151.

The opinion of the court was delivered by

WOODWARD, J.—The rulings of the court proceeded on the assumption that the will of Thomas Tobin, the ancestor of both

[*Tobin v. Gregg et al.*]

parties, plaintiffs and defendant, created a trust in his wife, for the benefit of his children and grandchildren, and hence it was inferred, that these plaintiffs (grandchildren of the testator) had a beneficial interest in the Fayette county farm, which farm passed to the defendant by his mother's deed, and which was a sufficient consideration to support the promise on which they sued him. And such is the argument in this court.

Granting the assumption and the inference, still the defendant's promise was to be proved to the satisfaction of the jury. The action is *assumpsit;* the promise rests in parol proof, and that of the most unsatisfactory sort; the confessions and casual declarations of the defendant made to third parties, who had no interest that entitled them to full explanations, or stimulated them to understand and remember exactly what was meant. The most that could properly be made of such evidence, was to refer it, in connection with the proofs on the other side, to the jury, to find whether the promise declared on, had indeed been made. If they should find the promise, then, according to the court's construction of the will, there was an adequate consideration for the promise, in the interest to which the plaintiffs were entitled by virtue of the supposed trusts of the will.

But the court seems to have withdrawn the question from the jury, by telling them that if they believed the evidence, the plaintiffs were entitled to recover. There was, therefore, a mistrial, even in the view which the court took of the will. The case should have gone to the jury, to say, whether the evidence proved the promise as laid.

But there was a greater mistake made upon the will. It would be a somewhat nice question, upon the authorities, whether the words of the testator created any trust whatever; but not to debate this, the trust, if trust there were, was coupled with a power of appointment very expressly given to Mrs. Tobin: " I will and bequeath to my loving wife, Lydia, all my property, of whatever description, both real and personal, *with full power to dispose of the same among my lawful heirs, or grandchildren, as she may think proper, at her decease, or before, if she may wish to distribute the whole, or part of the same.*" Mrs. Tobin's deed of 24th August 1844, to her son Martin, was a full and legal execution of this power, so far as concerned the farm in Fayette county. Martin was a son of the testator, and therefore within the description of " lawful heirs." The deed was a disposition of this much of the estate, according to her discretion, and so the power was strictly executed.

What interest, then, could remain for these plaintiffs in that land ? Obviously, none. The trust was defeated by the execution of the accompanying power of appointment. It was as if the testator had given the farm, out-and-out, by his will, directly to

[Tobin *v.* Gregg *et al.*]

Martin. Had the widow died without executing the power, the children and grandchildren might have alleged the trust, and then, the construction of the will, in this regard, would have been fairly raised. But as the case stands, there was no question of trust in it—no possible interest in these plaintiffs, to be a consideration for the defendant's promise. And as no other consideration is alleged, the promise, if proved to the satisfaction of the jury, would seem to have been *nudum pactum*. If Martin, seeing that his mother was clothed with this power of appointment, had promised, in consideration of her exercising it in his favour, that he would pay each of the heirs $600, it would have been a good promise, and he might have been held upon it. But then we should look for the promise as part of the transaction between the mother and son; and so far as the evidence is sent up to us, we should look in vain. We see no trace of it in the papers, nor in the testimony of Brownfield, who was the scrivener, the subscribing witness, and the magistrate who took the acknowledgment. He tells us in his testimony, that the old lady wanted her two married daughters who were there, Matilda Fields and Hester Monteith, to have $600 apiece—" she wanted Martin to pay them $600 apiece, and she would make him a deed for the land. Martin said, if they would sign him their interest, as heirs, he would do it. They agreed to do it." And accordingly, they made a formal written assignment to Martin, not of their interest merely in the Fayette farm, but of all their interest in their father's estate, both present and prospective. Martin's liability to these two sisters was thus definitely fixed; but not a syllable was written, or said, that looked to payments to the other children and grandchildren of the testator. There was considerable estate, both real and personal, beyond this farm, and over and above the specific devises in the old man's will, and whilst the widow held the power of appointment, the interest of the respective children was necessarily precarious. Under these circumstances, Martin agreed to give Matilda and Hester, $600 apiece, for their chances in the whole estate; and very likely he was willing to do the same by the rest of the brothers and sisters; but of this nothing appears to have been said, at the date and execution of the papers. Was it competent to overthrow and derange this most simple and intelligible transaction, by such parol proof as the plaintiffs submitted? The declarations proved, probably, had reference to the transactions with the sisters, and if fully expressed and understood, would have imported Martin's willingness to give each of the heirs $600, for their share of the *whole estate*, as he had agreed with the two sisters. To apply such declarations, not to the whole estate, but to this specific part of it, would make Martin pay more for his farm than he intended—more than either his father

[Tobin *v.* Gregg *et al.*]

or mother intended; for she told Brownfield, it was the old man's wish that Martin should have this land.

We think the evidence was entirely inadequate, to impeach the transaction between the mother, the son, and his two sisters; and instead of being adjudged sufficient by the court to support the plaintiffs' action, ought to have been rejected.

The declarations proved are not consistent with themselves, nor with the writings. And it is not the law, that when parties have consummated a conveyance of real estate, on terms that are fully discussed and understood at the time, without any fraud or mistake, the allusions and admissions of one of the parties made in the absence of the other, and to third parties having no interest in the transaction, can avail to change the essential conditions on which the conveyance was made. What passed at the time, may be proved by parol, to prevent fraud and correct mistakes; but if evidence such as carried this case, were tolerated, the most definite settlements of business would be only fruitful seeds of litigation and discord.

The judgment is reversed.